7 F.3d 227
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
FELIX NWAEBO, a/k/a/ Felix Ebo, Defendant-Appellant.
 No. 92-5557.
 United States Court of Appeals,
Fourth Circuit.
 Argued: July 16, 1993.
Decided: September 17, 1993.
 
 Appeal from the United States District Court for the District of Maryland, at Baltimore
 ARGUED: Edward Francis Houff, Church & Houff, P.A., for Appellant.
 Philip S. Jackson, Assistant United States Attorney, for Appellee.
 ON BRIEF: Gary P. Jordan, United States Attorney, Robert E. Sims, Assistant United States Attorney, for Appellee.
 D.Md.
 AFFIRMED
 Before ERVIN, Chief Judge, and PHILLIPS and MURNAGHAN, Circuit Judges.
 PER CURIAM:
 
 OPINION
 
 1
 Felix Nwaebo appeals his conviction of conspiracy to distribute and to possess with intent to distribute heroin and of conspiracy to import heroin, and the sentence imposed upon him as a result of the conviction.
 
 
 2
 Specifically, Nwaebo contends that: (1) there was insufficient evidence to support his conspiracy convictions; (2) the testimony of Maryland State Police Sergeant Lawrence Morse regarding the sale of one gram of heroin from Nwaebo to Morse was improperly admitted by the district court; (3) the district court improperly admitted evidence of uncharged misconduct and inadequately charged the jury with respect to such misconduct; and (4) the district court incorrectly calculated the amount of heroin attributable to Nwaebo for sentencing guidelines purposes and inappropriately adjusted his offense level upwardly upon finding him a leader and organizer in the conspiracy.
 
 
 3
 We find none of Nwaebo's arguments to have merit, and therefore affirm his conviction and sentence by the district court.
 
 
 4
 * We review the sufficiency of the evidence supporting Nwaebo's conspiracy convictions in the light most favorable to the government to determine whether any rational trier of fact could have found him guilty beyond a reasonable doubt. United States v. Giunta, 925 F.2d 758, 764 (4th Cir. 1991). Applying this standard, we find that the evidence was sufficient to support his convictions.
 
 
 5
 Lawrence Ejim, an alleged co-conspirator who distributed heroin in New York for the conspiracy's Nigerian source and kingpin, Bright Igwe, testified that he, Christian Azuaru and a person named Patrick from Philadelphia met with Nwaebo at Igwe's request. At this meeting, Nwaebo "agreed to distribute" heroin"as he had a connection in Baltimore," and took 300 grams of heroin at "$14,000 for a hundred grams of heroin-instead of 16. He told me he had to make his own commission out of whatever he distributed." (J.A. at 87-88). Ejim later testified that Azuaru and Nwaebo took additional quantities of four hundred and five hundred grams of heroin from him. (J.A. at 94). He also testified that Nwaebo and Azuaru had told him the drugs were distributed in Baltimore and San Juan, Puerto Rico. (J.A. at 95). Finally, in relation to the importation conspiracy charge, Ejim testified that Nwaebo recruited couriers to send to Igwe in Lagos. (J.A. at 92-94).
 
 
 6
 Azuaru also testified that Nwaebo had told him he was distributing heroin in Baltimore and the Bronx, that he, Azuaru, had helped Nwaebo on one occasion weigh "around 900 or 950" grams of heroin, and that he had accompanied Nwaebo on three trips to Baltimore "where he sells his heroin." (J.A. at 140-141, 146). In addition, Azuaru testified that on the first of these trips Nwaebo showed him a brown paper grocery bag half full of cash, (J.A. at 148) and on the third trip he saw Nwaebo in possession of a "small amount of money ... about fifteen thousand dollars." (J.A. at 152).
 
 
 7
 Kim Green, a former girlfriend of Nwaebo's, also testified that she saw him in possession of large amounts of cash which he had obtained from an individual she knew as Karim.[1] On one occasion, Green saw Nwaebo with a bag full "almost to the top" with money he said he had obtained from Karim, and on another occasion she saw him with a VCR box which contained stacks of money tied with rubber bands. Green testified that Nwaebo had told her this money came from his promoting rap concerts. (J.A. at 217-218).
 
 
 8
 Green also testified that she had accompanied Nwaebo on a trip to Texas, the state from which, per Ejim's testimony, Nwaebo recruited Nigerian couriers, and that Nwaebo had been greeted by about twenty men there who called him "Mr. President" and then spoke to him "in their language." (J.A. at 219-220).
 
 
 9
 Sergeant Morse testified that he had been brought into contact with Nwaebo by Maria Briscoe and her daughter Lisha Coleman for the purpose of buying heroin in New York in 1989. Initially Morse and Nwaebo exchanged telephone pager numbers and set up a code to identify each other's pages, but Morse was unable to follow up with Nwaebo due to another investigation. (J.A. at 427-435). In October 1990, however, Morse was paged by Nwaebo, who arranged for Morse to purchase a sample gram of heroin which Nwaebo indicated had come from a heroin brick.[2] (J.A. at 442-453). At this point, Morse agreed to purchase a further 200 grams of heroin from Nwaebo, (J.A. at 452), but this transaction never occurred.
 
 
 10
 After Nwaebo's arrest, a search with his consent yielded two telephone and address books which contained information for Igwe, Faruq, Briscoe and Ejim. (J.A. at 335-340). Nwaebo's telephone records also revealed a number of calls to Coleman. (J.A. at 359).
 
 
 11
 We find the evidence against Nwaebo to be more than sufficient to support his heroin distribution and importation conspiracy convictions.
 
 II
 
 12
 Nwaebo next contends that the district court erred in admitting the testimony of Sergeant Morse regarding the transaction in which Morse purchased the gram of heroin from Nwaebo. Nwaebo contends that because this evidence was admissible only as an act in furtherance of the conspiracy, and because Morse could not as an agent of the government be a co-conspirator, there was no co-conspirator to the transaction and thus evidence of it was inadmissible hearsay. There is no merit to this contention.
 
 
 13
 We also reject Nwaebo's contention that the conspiracy in which
 
 
 14
 Briscoe and Coleman were involved ended with the arrest of Faruq before Morse bought the gram of heroin from Nwaebo. There was sufficient "overlap of key actors, methods and goals" between the preFaruq and post-Faruq conspiracy to render it "one general business venture" or "one overall agreement." United States v. Leavis, 853 F.2d 215, 218 (4th Cir. 1988) (cites omitted). The district court's admission of Sergeant Morse's testimony, therefore, was not clearly erroneous.
 
 III
 
 15
 Nwaebo also challenges as inadequate the district court's instructions to the jury, given in reference to Sergeant Morse's testimony, that "[a] defendant is not on trial for any act or conduct not charged in the indictment." (J.A. at 596). As Nwaebo did not object to the instruction at trial, we review the district court's jury instruction for plain error. Fed. R. Crim. P. 52(b). Nwaebo's argument that the instruction was so inadequate as to constitute plain error hinges on his characterization of Sergeant Morse's testimony as relating solely to the heroin distribution charge against him, a charge the government had stipulated was not the subject of a separate count in the indictment. It is obvious, however, that Sergeant Morse's testimony also relates to the heroin distribution conspiracy count of the indictment which was charged misconduct, and thus Nwaebo's argument is without merit.
 
 IV
 
 16
 With regard to his sentencing, Nwaebo contends both that the quantities of heroin attributed to him by the district court in calculating his base offense level and a two level upward adjustment the court based on his leadership role in the conspiracy were erroneous. We find that the district court did not err in either respect.
 
 
 17
 To begin with, Nwaebo characterizes the critical testimony of Ejim, upon which the court principally relied in attributing 1200 grams to Nwaebo as being ambiguous respecting whether the amounts allegedly distributed by Ejim were solely to Nwaebo or to both Nwaebo and Azuaru. (Reply Br. at 6-7). Even assuming that any heroin distributed to Azuaru cannot be attributed to Nwaebo as a coconspirator, Nwaebo mischaracterizes Ejim's testimony, which was specifically that he gave Nwaebo 300 grams (J.A. at 89) and that he gave 400 and 500 gram quantities to Nwaebo and Azuaru, "I gave them the drug." (J.A. at 94) (emphasis added).
 
 
 18
 Similarly, the 1000 gram quantity that Nwaebo admits he told Morse he could provide Morse was properly attributed to him. The evidence was that he told Morse that the gram of heroin he sold to Morse came from a heroin brick; Morse testified that a "brick" generally weighs about a kilogram; and Nwaebo told Morse he could arrange for him to purchase upwards of a kilogram. (J.A. at 447). Similarly, the 900 gram quantity attributed to Nwaebo was supported by Azuaru's testimony that he had helped Nwaebo weigh "around 900 or 950" grams on one occasion. (J.A. at 141). The district court was not clearly erroneous in including any of these quantities of heroin in calculating a base offense level of 34 on the basis of their total.
 
 
 19
 Nor did the court commit plain error[3] in adjusting Nwaebo's offense level two levels for his role as a leader and organizer in the conspiracy. At the very least, the evidence showed that Nwaebo recruited heroin couriers for the conspiracy, and introduced the conspiracy's heroin into Baltimore and Puerto Rico.
 
 
 20
 The decision of the district court and its sentence are accordingly affirmed.
 
 AFFIRMED
 
 
 [1]
 Karim Faruq, who was also linked to Nwaebo through telephone records and through a heroin courier, Ethelbert Onuma, who Nwaebo had used to sell heroin to Faruq in New York. (J.A. at 259-261, 360-363)
 
 
 [2]
 Morse also testified that "most heroin bricks weigh out to about a kilogram." (J.A. at 453)
 
 
 [3]
 As Nwaebo withdrew his objection to the upward adjustment at the sentencing hearing, we review the district court's upward adjustment for plain error